IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CWIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15 C 6238 |
| ) | |
| FIRST STOP HEALTH, LLC, ) | |
| PATRICK SPAIN, KENNETH ) | |
| ANDERSON, and MARIA OPDYCKE, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

This lawsuit and underlying arbitration concern wage theft and breach of contract claims asserted by Andrew Cwik against First Stop Health, LLC, Patrick Spain, Kenneth Anderson, and Maria Opdycke (collectively, FSH), for whom he performed work from December 2012 through March 2015. Cwik filed the present lawsuit in July 2015. In April 2016, the Court compelled submission of Cwik's claims to arbitration pursuant to an arbitration clause in his independent contractor agreement with FSH. On January 22, 2019, Cwik initiated arbitration with the American Arbitration Association (Case No. 01-19-0000-2255). On July 21, 2022, Arbitrator Jules Crystal issued a final award resolving all of Cwik's claims largely in FSH's favor. The award did, however, order FSH to provide Cwik with equity options to which Arbitrator Crystal found he was entitled.

On October 21, 2022 FSH filed before this Court an application to modify the award in part and otherwise confirm the award. On December 28, 2022, Cwik filed a response to FSH's application and asserted a cross-application to vacate the award, or in the alternative, to confirm it in part and modify it in part.

For the reasons set forth below, the Court denies FSH's application to modify the award and remands the case to the arbitrator for the limited purpose of clarifying the material terms of the award of equity options. The Court denies Cwik's application to vacate or to partly confirm and partly modify the award. The Court also terminates FSH's application to confirm the award without prejudice to renewal following the arbitrator's clarification regarding the award of equity options.

## Background

The Court takes the following facts from its prior orders and the parties' briefs. A more detailed recounting of Cwik's allegations and the facts of this case can be found in the Court's April 10, 2016 decision on FSH's petition to compel arbitration. *See Cwik v. First Stop Health, LLC*, No. 15 C 6238, 2016 WL 1407708 (N.D. Ill. Apr. 10, 2016).

On November 8, 2012, FSH offered Cwik a consulting contract to perform some discrete work related to FSH's website. On November 13, 2012, the parties executed an independent contractor agreement (ICA) that contained an arbitration requirement. After deciding not to move forward with the work that it originally hired Cwik to perform, FSH offered Cwik a contract to serve as a project manager/quality assurance resource. Cwik began working in that capacity on December 7, 2012 and continued performing a variety of assignments for FSH until he was terminated on March 10, 2015. But the parties never modified or terminated their original November 2012 ICA agreement prior

the end of Cwik's relationship with FSH.

Approximately four months after he was terminated, Cwik filed the present lawsuit asserting claims under the Fair Labor Standards Act, the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act. FSH filed a petition to compel arbitration based on the parties' November 2012 ICA and—following a period of discovery focused on the question of whether there was an agreement to arbitrate, and then a bench trial directed to that question—the Court granted FSH's petition, stayed the lawsuit, and compelled Cwik to arbitrate his claims as required by the parties' agreement. Two years later, Cwik filed an application to vacate both the stay and the Court's order compelling arbitration, which the Court denied on May 30, 2018.

On January 22, 2019, Cwik filed various claims with the AAA, and FSH filed an answer and counterclaims. On September 13, 2019, Cwik asserted supplemental claims before Arbitrator Crystal. On July 14, 2020, FSH filed an application for summary judgment, which Arbitrator Crystal granted in part and denied in part on August 24, 2020. Cwik's remaining claims proceeded to a hearing and then to a round of briefing on FSH's application for a directed verdict. Arbitrator Crystal granted FSH's application for a directed verdict on Cwik's supplemental claims.

On July 19, 2022, Arbitrator Crystal issued a final award resolving all claims. The arbitrator ruled as follows:

- he confirmed that the parties' arbitration agreement governed Cwik's claims;
- he sustained Cwik's claims alleging entitlement to equity options;
- he dismissed Cwik's supplemental claims (violation of the Illinois Securities Act, common law fraud, breach of fiduciary duty, constructive fraud, and

unjust enrichment);

- he sustained FSH's breach of contract counterclaim;

- he ordered Cwik to return or destroy any and all FSH customer medical records that he improperly retained following his termination;

- he confirmed his prior summary judgment ruling dismissing Cwik's claims under the Fair Labor Standards Act, the Illinois Minimum Wage Law, and the Securities Exchange Act, as well as Cwik's claim for overtime pay under the Illinois Wage Payment and Collection Act;

- he incorporated his previous order granting FSH's application for a directed verdict (dismissing Cwik's supplemental claims for retaliation and intentional infliction of emotional distress); and

- he incorporated his previous order awarding FSH fees and costs in the amount of of $34,950.64 for Cwik's discovery violations.

Arbitrator Crystal's award was based in part on his conclusion that FSH had misclassified Cwik as an independent contractor when he was, in fact, an employee. Because Arbitrator Crystal found that Cwik was an employee, he concluded that FSH breached its agreement to provide Cwik with stock options and violated the Illinois Wage Payment and Collection Act for denying Cwik those options. Arbitrator Crystal also found, however, that "[w]hile [Cwik] may have been misclassified as a contractor, the parties continued to operate under the Independent Contractor Agreement" because it was never terminated or expressly modified. Pet'r's Mot. to Modify and Confirm Arbitration Award, Ex. 8 at 18. Thus, Arbitrator Crystal concluded, Cwik's claims were properly before him pursuant to the parties' agreement to arbitrate found in the ICA.

4

One point relevant to the applications before the Court is the portion of Arbitrator Crystal's award ordering FSH to provide Cwik with equity options to which the arbitrator concluded he was entitled. By way of background, in May 2012, FSH executives exchanged e-mails regarding an offer of employment to Cwik. The draft offer letter attached to the e-mails contained an equity provision that stated: "'You will receive 1% of equity in FSJ (pre Series A-2 round) in the form of options. First 1/4 will vest after a year of employment, the rest will vest quarterly over the next three years from your date of hire.'" *Id.* at 25 (quoting the May 29, 2013 draft offer letter). Based on this language, Arbitrator Crystal ordered FSH to provide to Cwik "'1% of equity in FSJ (pre Series A-2 round) in the form of options' vested in accordance with the details in the May 29, 2013 letter." *Id.* at 33 (quoting the May 29, 2013 draft offer letter). For purposes of determining Cwik's stock options, Arbitrator Crystal concluded that his date of hire was January 18, 2013. Arbitrator Crystal also noted that "the email does not provide details as to the amount of the options and how they could be exercised." *Id.* at 26.

As previously stated, on October 21, 2022, FSH filed an application to modify Arbitrator Crystal's final award in part and otherwise confirm it. Specifically, FSH asks the Court to add language to the award that would clarify its obligations vis-à-vis Cwik's stock options. FSH proposes the following language:

> FSH is to provide to Claimant 1% of equity in FSH (pre Series A-2 round), calculated as of the date of hire, *i.e.*, January 18, 2013 (the "Start Date") in the form of options with the first 1/4 to vest after a year of employment, and the rest to vest quarterly over the next three years from the Start Date until the date that FSH terminated Claimant (*i.e.*, March 10, 2015). The options will be subject to other standard terms ordinarily governing options issued to employees by FSH on or around the Start Date, *e.g.*, subject to FSH's existing options plan and exhibits, with a strike price consistent with other options issued on or about the Start Date.

Pet'r's Mot. to Modify and Confirm Arbitration Award at 5 (internal quotation marks omitted). FSH requests that the Court otherwise confirm the award.

Cwik opposes FSH's application and has made a number of requests for relief. Cwik asks the Court to vacate the arbitration award and declare that no duty to arbitrate ever existed. In the alternative, he asks the Court to order Arbitrator Crystal to re-examine the question of arbitrability and the statute of limitations issues that were relevant to FSH's application for summary judgment. Also in the alternative, Cwik asks the Court to confirm the part of the award that entitles him to stock options but modify it to clarify that FSH is to provide him with options at a zero-dollar strike price.

## Discussion

Under the Federal Arbitration Act (FAA), "arbitration awards are largely immune from . . . scrutiny in court." *Cont'l Cas. Co. v. Certain Underwriters at Lloyds of London*, 10 F.4th 814, 816 (7th Cir. 2021). "Judicial review of arbitration awards is extremely limited." *Johnson Controls, Inc. Systems & Servs. Div. v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Industry of U.S. & Canada, AFL-CIO*, 39 F.3d 821, 824 (7th Cir. 1994). Upon application by a party to the arbitration "at any time within one year after the award is made," a court may enter an order confirming the award so long as it is not vacated or modified. 9 U.S.C § 9.

**A.     Applications to modify**

A court may modify an award only if there was an evident material miscalculation or material mistake, the arbitrator issued an award on a matter not submitted to him, or the award contains some imperfection of form that does not affect the merits of the

6

controversy.  9 U.S.C. § 11.  Cwik offers no justification for why the Court should modify the award as he proposes—that is, to specify that he is owed stock options at a zero-dollar strike price.  For its part, FSH contends that its proposed modification does not affect the merits of the controversy because, it argues, this aspect of the award "lacks clarity to the point of preventing compliance."  Pet'r's Mot. to Modify and Confirm Arbitration Award at 4.

The Court concludes that the proper remedy for what FSH concedes is a lack of clarity in Arbitrator Crystal's award is not for the Court to modify the award according to either FSH or Cwik's unsupported interpretations.  Rather, the appropriate course is to remand the matter to the arbitrator for further clarification.

An arbitrator's award must be enforced as written, but if it is "too ambiguous to be enforced," a court may remand the matter back to the arbitrator for clarification.  *Bhd. of Locomotive Eng'rs v. Union Pac. R.R. Co.*, 500 F.3d 591, 592 (7th Cir. 2007); *see generally Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 333–34 (3d Cir. 1991) ("Although there is no explicit provision in the [FAA] for such a remand, courts have uniformly stated that a remand to the arbitration panel is appropriate in cases where the award is ambiguous.").  An award is ambiguous if it "is susceptible to more than one interpretation."  *Bhd. of Locomotive Eng'rs*, 500 F.3d at 592 (quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 977 (6th Cir. 2000)).  The Seventh Circuit has recently emphasized, however, that courts should, "if possible, resolve apparent ambiguities by examining the arbitrator's opinion and the record.'"  *Nano Gas Techs., Inc. v. Roe*, 31 F.4th 1028, 1031 (7th Cir. 2022) (quoting *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. PPG Indus., Inc.*, 751 F.3d 580, 585

(7th Cir. 2014)).  Accordingly, the threshold issue is whether the terms of the stock options that Arbitrator Crystal ordered FSH to provide to Cwik in the award are ambiguous, and if so, whether the record resolves the ambiguity such that the parties can be reasonably certain of their rights moving forward.

The Court concludes that Arbitrator Crystal's award is ambiguous in this regard and that the ambiguity cannot be resolved by the record before the Court.  Specifically, as FSH contends, the award "fails to define certain material terms necessary for FSH to fulfill its obligations . . . including but not limited to defining the price Cwik must pay to exercise his options."  Pet'r's Mot. to Modify and Confirm Arbitration Award at 4.  FSH concedes that, as currently written, the award poses issues for FSH's compliance.  But FSH's proposed modification does little to clear up the questions left open by the terms of the award.  Though it may be perfectly rational to assume that Cwik's options will be subject to the same standard terms, pricing, and options plans ordinarily governing the options issued to other employees around the time of Cwik's start date, FSH provides no insight into what those terms, prices, or plans are.  Cwik also fails to explain why his proposal of a zero-dollar strike price is appropriate, or, for that matter, why the award "should be interpreted in a light most favorable to [him]."  Resp't's Resp. to Pet'r's Mot. to Modify and Confirm Arbitration Award at 12.  If anything, this disagreement between the parties makes it readily apparent that the award "is susceptible to more than one interpretation." *Bhd. of Locomotive Eng'rs*, 500 F.3d at 592 (quoting *Green*, 200 F.3d at 977).

The rest of the award and record do not resolve this ambiguity, and if anything, show the need for greater clarity so that the parties can avoid further litigation.  In the

8

award, Arbitrator Crystal himself acknowledges that "employees were promised stock options with some specifics but without specifics of a formal plan," Pet'r's Mot. to Modify and Confirm Arbitration Award, Ex. 8 at 20, and that "the email does not provide details as to the amount of the options and how they could be exercised." *Id.* at 26 (referring to the May 29 e-mail on which this part of the award is based).

These statements support the proposition that the award is ambiguous regarding the terms of the stock options the arbitrator found Cwik entitled to receive. By analogy, an injunction order—which is essentially what is involved here—must "be precise and self-contained, so that a person subject to it who reads it and nothing else has a sufficiently clear and exact knowledge of the duties it imposes on him." *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998); *see also Patriot Homes, Inc. v. Forest River Hous., Inc.*, 512 F.3d 412, 415 (7th Cir. 2008) (explaining that an injunction's "requirement of specificity spares courts and litigants from struggling over an injunction's scope").

In sum, the Court concludes that the award is ambiguous because it does not delineate the boundaries and terms of the options to which Cwik is entitled. The Court therefore remands the matter to the arbitrator for clarification on this specific point (but only on this point).

**B.     Application to vacate**

Vacating an award is permitted in only four circumstances: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown,

9

or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). The Seventh Circuit also recognizes manifest disregard of the law as a basis for vacating an award under section 10(a)(4). *See George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 581 (7th Cir. 2001).

Cwik appears to contend that the award should be vacated because of what he contends is Arbitrator Crystal's evident partiality, manifest disregard of the law, and exceeding of his powers.

As a threshold matter, Cwik's application is untimely, as FSH contends. Under 9 U.S.C. § 12, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." Because Arbitrator Crystal issued the award on July 21, 2023, the deadline for the parties to file an application to vacate or modify the award was October 21, 2022. Cwik, however, did not file his application to vacate—which he included as part of his response to FSH's timely-filed application to confirm in part and modify in part—until more than two months after that, on December 28, 2022. Cwik's application to vacate is therefore time-barred.

Even if Cwik's application had been filed on time, it would fail. There is no basis for the Court to conclude that any of the challenges that Cwik raises to the award would have any merit. First, his contention that Arbitrator Crystal's acknowledgement of and agreement with this Court and another arbitrator's prior decisions on the question of

10

arbitrability reflects evident partiality lacks merit. Arbitrator Crystal provided a thorough and well-reasoned explanation of why he believed that Cwik's claims were properly before him. The fact that Arbitrator Crystal's independent decision on arbitrability was in line with that of prior adjudicators to resolve the same question—and that he was "loath to second guess" the two previous decisions—does not demonstrate evident partiality. Pet'r's Mot. to Modify and Confirm Arbitration Award, Ex. 8 at 17. And Cwik's other contentions regarding the issue of arbitrability are simply an attempt to rehash an issue that has been argued and decided against him four times over. He has offered no viable basis to reconsider that decision now.

Nor is there any basis to conclude that Arbitrator Crystal manifestly disregarded the law. "Th[at] standard applies in two situations: (1) when an arbitrator orders the parties to do something illegal; and (2) when the arbitrator does not follow the directives of the parties' agreement." *George Watts & Son, Inc.*, 248 F.3d at 581. Arbitrator Crystal's award does not involve either of these scenarios. Cwik seizes on the fact that one of the cases relied on by Arbitrator Crystal—*Biller v. S-H OpCo Greenwich Bay Manor*, LLC, 961 F.3d 502, 508 (1st Cir. 2020)—applied Rhode Island law. But Arbitrator Crystal acknowledged this in his award, stating that "[w]hile *Biller* involved a contract executed under Rhode Island law, Illinois law is similar. When parties modify a contract, prior provisions that are not changed remain in effect so long as the modifications are not inconsistent with prior provisions." Pet'r's Mot. to Modify and Confirm Arbitration Award, Ex. 8 at 19 (citing *Curia v. Nelson*, 587 F.3d 824, 830 (7th Cir. 2009)). Even if Arbitrator Crystal misapplied the law—and there is no basis to believe he did—"[f]actual or legal error, no matter how gross, is insufficient to support

11

overturning an arbitration award." *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008).

Cwik also challenges Arbitrator Crystal's ruling on FSH's application for summary judgment by arguing that he "exceeded his authority by ignoring the established law of all States that have dealt with the question of whether or not an arbitration is Subject to a State' [sic] Statutes of limitations." Resp't's Resp. to Pet'r's Mot. to Modify and Confirm Arbitration Award at 6. But Cwik cites no binding or persuasive precedent holding that statutes of limitations do not apply to arbitral proceedings. And the AAA rules explicitly provide that "[i]t is the responsibility of the filing party to ensure that any conditions precedent to the filing of a case are met prior to filing for an arbitration, as well as *any time requirement associated with the filing.*" AAA Comm. Arb. Rules, Rule R-4(c). In addition, despite contending that Arbitrator Crystal ignored established law, Cwik also states that "Illinois Courts have not dealt with this issue." Resp't's Resp. to Pet'r's Mot. to Modify and Confirm Arbitration Award at 6. Cwik's contentions fall far short of showing that Arbitrator Crystal exceeded his authority or manifestly disregarded the law when applying statutory limitations periods to Cwik's claims.

In sum, Cwik's application to vacate is untimely. Even if that were not the case, Cwik has not met the exacting standard set by section 10(a) for a Court's vacatur of an arbitration award. Cwik's application amounts to a reassertion of similar arguments that have been made and rejected not only by the Court, but by two arbitrators. The issue before the Court at this point is not whether the work Cwik performed was done as an employee or as an independent contractor, whether his claims had to be submitted to arbitration, or whether he is owed stock options at all. Rather, the question is whether

the Arbitrator's award must be vacated due to one of the aforementioned factors under section 10(a) of the FAA. The answer to that question is no.

## Conclusion

For the reasons stated above, the Court denies petitioners' application to modify the award of arbitration [dkt. no. 81] but remands the case to the arbitrator for clarification of the terms of the stock options owed to Cwik as discussed within this opinion. Petitioners' application to confirm [dkt. no. 81] is terminated without prejudice to renewal following the arbitrator's decision on remand. Respondent's application to vacate the award or, in the alternative, to modify and confirm it in part [dkt. no. 87] is denied. The parties are directed to promptly resubmit this matter to the arbitrator for further proceedings consistent with this order. A joint status report is to be filed on July 15, 2023, and the case is set for a telephonic status hearing on July 21, 2023 at 8:50 a.m., using call-in number 888-684-8852, access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 5, 2023